UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MENTHER IBRAHEEM MUHAMD,

Petitioner,

v.

ICE FIELD OFFICE DIRECTOR,

Respondent.

Case No. C20-605-RAJ-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Petitioner, who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, brings this 28 U.S.C. § 2241 habeas action *pro se* to obtain release from detention or a bond hearing. (Pet. (Dkt. # 1).) Currently before the Court is the Government's motion to dismiss. (Mot. (Dkt. # 5).) Petitioner did not file a response. Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that Petitioner's request for release be DENIED but that he be GRANTED a bond hearing.

## II.    BACKGROUND

Petitioner is a native and citizen of Iraq, who was admitted to the United States as a refugee in August 2011. (Schaefer Decl. (Dkt. # 7) at ¶ 3.) In May 2013, Petitioner adjusted his status to lawful permanent resident, retroactive to his entry date. (*Id.*)

Petitioner eventually settled in Alaska, where he came to the attention of local law enforcement authorities in April 2015, after his barber reported that he made pro-ISIS statements. (*See* Hennes Decl. (Dkt. # 6), Exs. B-C.) Investigations by the Alaska State Police and the FBI followed. (*See id.*, Exs. B-G.) On November 3, 2017, immigration authorities took Petitioner into custody and issued a Notice to Appear ("NTA"), charging him with removability under 8 U.S.C. § 1227(a)(1)(A), as a noncitizen who was inadmissible at the time of his entry because he willfully misrepresented material facts on his refugee application, specifically that he had previously provided material support to al-Qaeda in Iraq ("AQI") and had three brothers tied to foreign terrorist organizations. (*See* Schaefer Decl. at ¶ 4; Hennes Decl., Exs. A, I-L.)

On January 9, 2018, and February 13, 2018, Petitioner appeared *pro se* before an immigration judge ("IJ") and requested continuances to obtain a lawyer. (Schaefer Decl. at ¶¶ 5-6.) On March 28, 2018, Petitioner appeared with counsel, who requested and was granted a continuance to review the charges and evidence before entering a plea. (*Id.* at ¶ 7.) On April 18, 2018, Petitioner denied the removal charge, and the IJ set the case for a merits hearing on July 11, 2018. (*Id.* at ¶ 8.)

On July 9, 2018, Petitioner received a bond hearing before an IJ at which he was represented by counsel.[1] (Schaefer Decl. at ¶ 9; Hennes Decl., Ex. M.) The IJ denied bond, finding that she did not have jurisdiction to consider Petitioner's release because he was subject

---

[1] In accordance with the routine policy of the Executive Office for Immigration Review, the IJ did not record the bond hearing. (Schaefer Decl. at ¶ 9.)

REPORT AND RECOMMENDATION - 2

1    to mandatory detention for having provided material support for terrorism. (Hennes Decl., Ex.

2    M.) In the alternative, the IJ found that Petitioner presents a danger to the community and a flight

3    risk. (*Id.*) Petitioner did not appeal the IJ's decision to the Board of Immigration Appeals

4    ("BIA"). (Schaefer Decl. at ¶ 10.)

5         Petitioner subsequently moved to suppress and terminate his removal proceedings.

6    (Schaefer Decl. at ¶ 11.) Testimony regarding removability spanned three separate hearing dates:

7    July 11, 2018, August 28, 2018, and September 24, 2018. (*Id.* at ¶ 12.) On October 2, 2018, the

8    IJ sustained the removal charge, finding that Petitioner failed to disclose all of his siblings on his

9    refugee application, which was a material misrepresentation because an asylum officer testified

10    that if an individual's family has terrorist connections, it is unlikely the individual would receive

11    refugee status. (*Id.* at ¶ 13; Hennes Decl., Ex. N at 2-6.) On October 22, 2018, Petitioner filed

12    applications for relief and protection from removal. (Schaefer Decl. at ¶ 14.) On February 6,

13    2019, the IJ conducted a merits hearing on those applications. (*Id.*) On February 22, 2019, the IJ

14    denied all relief and ordered Petitioner removed to Iraq. (*Id.* at ¶ 15; Hennes Decl., Ex. O.)

15    Among other things, the IJ found that Petitioner was ineligible for certain forms of relief because

16    he failed to rebut the government's evidence that he afforded material support to AQI and

17    received military-type training. (Hennes Decl., Ex. O at 16-20.) The BIA dismissed Petitioner's

18    appeal on August 16, 2019. (Schaefer Decl. at ¶ 16; Hennes Decl., Ex. P.)

19         On September 10, 2019, Petitioner filed a counseled petition for review with the Ninth

20    Circuit Court of Appeals and obtained an automatic stay of removal. *Muhamd v. Barr*, No.

21    19-72311, Dkt. # 1 (9th Cir.). The briefing has been completed and oral argument is scheduled

22    for September 3, 2020. *Id.*, Dkt. # 28.

23

1    On November 20, 2019, ICE completed a Post Order Custody Review and issued

2    Petitioner a Notice to Continue Detention based on its determination that Petitioner poses a

3    danger to the community because of an "active, continuing investigation on [Petitioner's]

4    involvement in the military organizations that fought against U.S. forces and their allies."

5    (Schaefer Decl. at ¶ 19; Hennes Decl., Ex. R at 1.)

6                                    **III.    DISCUSSION**

7            Petitioner seeks release from immigration detention or a bond hearing. The Government

8    argues he is not entitled to either form of relief. As discussed below, the Court concludes that he

9    is subject to mandatory detention under 8 U.S.C. § 1226(c) and is not entitled to release.

10   However, because his current detention does not comport with the requirements of due process,

11   the Court recommends that he be afforded a bond hearing.

12           **A.  Petitioner's Detention is Mandated by 8 U.S.C. § 1226(c)**

13           Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of

14   noncitizens who are present in the United States and have been placed in removal proceedings.[2]

15   *Jennings v. Rodriguez*, 138 S.Ct. 830, 846 (2018). Section 1226(a) authorizes DHS to arrest and

16   either detain or release on bond noncitizens "pending removal proceedings," except as provided

17   in § 1226(c). *Id.* Section 1226(c) states that DHS "'shall take into custody any [noncitizen]' who

18   falls into one of the enumerated categories involving criminal offenses and terrorist activities."

19   *Id.* (quoting § 1226(c)(1)). DHS "may release" such a noncitizen "*only if*" DHS decides that

20

21

22   _____
     [2] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of
23   2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement
     functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for
     Immigration Review retained its role in administering immigration courts and the BIA. *See Hernandez v.*
     *Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

1  doing so is necessary for witness-protection purposes and the noncitizen will not pose a danger

2  or flight risk. *Id.* (quoting § 1226(c)(2), emphasis in *Jennings*).

3      The IJ found that Petitioner was detained pursuant to § 1226(c) because he provided

4  material support to a terrorist organization. *See* 8 U.S.C. § 1226(c)(1)(D) (providing for

5  mandatory detention of noncitizens who are deportable under 8 U.S.C. § 1227(a)(4)(B), which

6  includes noncitizens described in 8 U.S.C. § 1182(a)(3)(B)); 8 U.S.C. §§ 1182(a)(3)(B)(i)(I)

7  (identifying noncitizens who have "engaged in a terrorist activity"), (iv)(VI) (defining "engaged

8  in a terrorist activity" as including "an act that the actor knows, or reasonably should know,

9  affords material support . . . ."); *see also Nielsen v. Preap*, 139 S.Ct. 954, 970-71 (2019)

10  (recognizing that noncitizens subject to detention under § 1226(c)(1)(D) for terrorism-related

11  activities may not have been convicted of any crime). Petitioner did not seek review of this

12  determination by the BIA.

13      In this case, Petitioner does not challenge the IJ's determination that he was originally

14  detained under § 1226(c). (*See generally* Pet.) Instead, he argues that pursuant to

15  *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008), the

16  statutory authority for his detention shifted from § 1226(c) to § 1226(a) when he filed his petition

17  for review with the Ninth Circuit and obtained a stay of removal. (*See* Pet. at 3-5.) Petitioner is

18  correct that under *Casas-Castrillon*, his detention is governed by § 1226(a). The Government

19  argues, however, that the Supreme Court's decision in *Jennings* abrogated *Casas-Castrillon*'s

20  relevant holding. (Mot. at 10-21.) As discussed below, the Court agrees with the Government.

21      *Casas-Castrillon* remains binding circuit authority unless it is "clearly irreconcilable"

22  with higher authority. *See In re Amy*, 714 F.3d 1165, 1167 (9th Cir. 2013). The "clearly

23  irreconcilable" requirement is a "high standard." *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir.

2012) (quoted source omitted). "[I]t is not enough for there to be 'some tension' between the intervening higher authority and prior circuit precedent . . . ." *Id.* (quoted source omitted). So long as the court "can apply . . . prior circuit precedent without running afoul of the intervening authority," it must do so. *Id.* (internal quotation marks omitted).

The handful of judges who have considered this issue, including the undersigned, have reached different conclusions. *Compare Djelassi v. ICE Field Office Director*, 434 F.Supp.3d 917, 927-28 (W.D. Wash. 2020) (Martinez, C.J., adopting R. & R. of Peterson, M.J., concluding that *Casas-Castrillon* is clearly irreconcilable with *Jennings*); *with Avilez v. Barr*, No. 19-8296, 2020 WL 1704456, at *2-3 (N.D. Cal. Apr. 8, 2020), *appeal pending*, No. 20-16142 (9th Cir.) (concluding that *Jennings* and *Casas-Castrillon* are not clearly irreconcilable); *Birru v. Barr*, No. 20-1285, 2020 WL 1905581, at *7-8 (N.D. Cal. Apr. 17, 2020) (same); *Singh v. Barr*, No 20-2346, 2020 WL 1929366, at *6-7 (N.D. Cal. Apr. 20, 2020) (same). Having carefully reviewed the relevant authority, the Court concurs with its original conclusion in *Djelassi* that the relevant holding in *Casas-Castrillon* is clearly irreconcilable with *Jennings*.

*Casas-Castrillon* involved a legal permanent resident who had been detained for seven years without an opportunity to contest his detention before an IJ. 535 F.3d at 944. At the time he filed his habeas petition, his administrative proceedings had concluded, and he was awaiting the Ninth Circuit's decision on his petition for review. *Id.* at 945. The petitioner was initially subject to mandatory detention under § 1226(c), but both parties agreed that at some point that section no longer governed his detention. *Id.* at 946. The Ninth Circuit held that § 1226(c) could not mandate the petitioner's seven-year detention because this provision applies to "expedited removal of criminal [noncitizens]," *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005), and was intended only to govern "detention of deportable criminal [noncitizens] *pending their*

1    *removal proceedings*," which generally lasts only a few months, *Demore v. Kim*, 538 U.S. 510,

2    527-28 (2003). *Casas-Castrillon*, 535 F.3d at 947-48 (emphasis in *Demore*). The Ninth Circuit

3    also cited regulations stating that § 1226(c) applies "during removal proceedings," 8 C.F.R.

4    § 236.1(c)(1)(i), and that the "conclusion of proceedings" occurs upon the BIA's dismissal of the

5    noncitizen's appeal, 8 C.F.R. § 1241.1(a). *Casas-Castrillon*, 535 F.3d at 948; *see also id.* ("the

6    mandatory, bureaucratic detention of [noncitizens] under § 1226(c) was intended to apply for

7    only a limited time and ended in this case when the BIA affirmed Casas' order of removal . . .").

8        Having concluded that § 1226(c) did not authorize the petitioner's prolonged detention,

9    the Ninth Circuit held that he was detained under § 1226(a), which authorizes detention "pending

10   a decision on whether the [noncitizen] is to be removed from the United States."

11   *Casas-Castrillon*, 535 F.3d at 948 (quoting § 1226(a)). The Ninth Circuit explained that "[i]t is

12   reasonable to consider the judicial review of a removal order as part of the process of making an

13   ultimate 'decision' as to whether [a noncitizen] 'is to be removed.'" *Id.* (quoting *Prieto-Romero*

14   *v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) (quoting § 1226(a))). Thus, the petitioner was

15   detained under § 1226(a) while his petition for review remained pending. *Id.*

16       In *Jennings*, the Supreme Court reversed the Ninth Circuit's decision in *Rodriguez v.*

17   *Robbins* ("*Rodriguez III*"), 804 F.3d 1060 (9th Cir. 2015), which held, based on the canon of

18   constitutional avoidance, that § 1226(c) required periodic bond hearings every six months.

19   *Jennings*, 138 S.Ct. at 836. According to the Supreme Court, this was an "implausible"

20   construction of the statute. *Id.* The Supreme Court explained:

21       [Section] 1226(c) does not on its face limit the length of the detention it authorizes.
         In fact, by allowing [noncitizens] to be released "only if" the Attorney General
22       decides that certain conditions are met, § 1226(c) reinforces the conclusion that
         [noncitizens] detained under its authority are not entitled to be released under any
23       circumstances other than those expressly recognized by the statute. And together
         with § 1226(a), § 1226(c) makes clear that detention of [noncitizens] within its

scope must continue "pending a decision on whether the [noncitizen] is to be removed from the United States." § 1226(a).

*Id.* at 846. The Supreme Court went on to reject the argument "that § 1226(c)'s 'silence' as to the length of detention 'cannot be construed to authorize prolonged mandatory detention . . . ,'" reasoning that "§ 1226(c) is *not* 'silent' as to the length of detention. It mandates detention 'pending a decision on whether the [noncitizen] is to be removed from the United States,' § 1226(a), and it expressly prohibits release from that detention except for narrow, witness-protection purposes." *Id.* (emphasis in original); *see also id.* at 847 ("Under § 1226(c), the Government must detain [a noncitizen] until 'a decision on *whether* the [noncitizen] is to be removed' is made.") (quoting § 1226(a), emphasis in *Jennings*). To bolster this conclusion, the Supreme Court noted its prior holding in *Demore* that § 1226(c)'s "definite termination point" is the "conclusion of removal proceedings," which "marks the end of the Government's detention authority under § 1226(c)." *Id.* at 846 (citing *Demore* 538 U.S. at 529). The Supreme Court also rejected the argument that "§ 1226(c)'s limited authorization for release for witness-protection purposes does not imply that other forms of release are forbidden," relying on the plain language of the statute to conclude "that the covered [noncitizens] may be released 'only if' certain conditions are met . . . ." *Id.* at 847 (quoting § 1226(c)(2)). Ultimately, the Supreme Court held "that § 1226(c) mandates detention of any [noncitizen] falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the [noncitizen] is released for witness-protection purposes." *Id.*

*Jennings* and *Casas-Castrillon* both address the length of detention permitted by § 1226(c). Both courts conclude that § 1226(c) detention ends at the "conclusion of removal proceedings." *Jennings*, 138 S.Ct. at 846; *see Casas-Castrillon*, 535 F.3d at 948 (identifying the "conclusion of proceedings"). The courts, however, define this point differently. Under *Jennings*,

removal proceedings conclude when the "'decision on whether the [noncitizen] is to be removed' is made." 138 S.Ct. at 847 (quoting § 1226(a)); *see also id.* at 846 ("[T]ogether with § 1226(a), § 1226(c) makes clear that detention of [noncitizens] within its scope must continue 'pending a decision on whether the [noncitizen] is to be removed from the United States.'") (quoting § 1226(a)); *id.* (§ 1226(c) "mandates detention 'pending a decision on whether the [noncitizen] is to be removed from the United States'") (quoting § 1226(a)). This includes the petition for review process when the court of appeals grants a stay of removal. *Prieto-Romero*, 534 F.3d at 1062. As is apparent from *Jennings*'s repeated references to § 1226(a), the Supreme Court views the length of detention permitted by § 1226(c) to be the same as that permitted by § 1226(a). The only difference between the provisions is that § 1226(a) detention is discretionary, while § 1226(c) detention is mandatory.

      *Casas-Castrillon* identifies a different point at which removal proceedings end—the dismissal of the noncitizen's appeal by the BIA. 535 F.3d at 948 ("Once Casas' proceedings before the BIA were complete, the Attorney General's authority to detain him under § 1226(c) ended . . . ."). The Ninth Circuit recognized that § 1226(a) authorizes detention "pending a decision on whether the [noncitizen] is to be removed from the United States," which includes the petition for review process, but the court did not use this as the yardstick by which to measure § 1226(c) detention. *See id.*

      When a noncitizen does not file a petition for review, the BIA's decision is also the decision on whether the noncitizen is to be removed. But in every case where the noncitizen files a petition for review and obtains a stay of removal, the BIA's decision and the decision on whether the noncitizen is to be removed are not synonymous and are often decided years apart. The Supreme Court in *Jennings* held that § 1226(c) detention is mandated until the "decision on

1   whether the [noncitizen] is to be removed from the United States" is made, 138 S.Ct. at 846-47

2   (quoting § 1226(a)), which the Ninth Circuit has held includes judicial review of a removal order

3   when removal is stayed, *Prieto-Romero*, 534 F.3d at 1062. *Casas-Castrillon* reached a different

4   conclusion regarding when § 1226(c) detention ends. This Court thus concludes that the Ninth

5   Circuit's holding in *Casas-Castrillon* that § 1226(c) detention ends with the BIA's decision is

6   clearly irreconcilable with the Supreme Court's holding in *Jennings* that § 1226(c) mandates

7   detention pending a decision on whether the noncitizen is to be removed from the United States,

8   which, under *Prieto-Romero*, includes the decision on any petition for review.

9          The Court respectfully disagrees with the decisions reaching the opposite conclusion.

10  *Avilez* focused on the statement in *Jennings* that "together with § 1226(a), § 1226(c) makes clear

11  that detention of [noncitizens] within its scope *must* continue 'pending a decision on whether the

12  [noncitizen] is to be removed from the United States.'" *Jennings*, 138 S.Ct. at 846 (quoting 8

13  U.S.C. § 1226(a), emphasis in *Jennings*). The *Avilez* court explained,

> One could reasonably interpret the language "together with § 1226(a), § 1226(c)"
> to mean that the two statutory sections work together to ensure that a noncitizen
> remains in custody pending judicial review of a final order of removal, because
> § 1226(c) applies before the order of removal becomes final, and § 1226(a) applies
> after the order of removal becomes final. *See id.* This interpretation is consistent
> with the holding in *Casas*. *See* 535 F.3d at 948.

18  *Avilez*, 2020 WL 1704456 at *3; *see also Birru*, 2020 WL 1905581, at *8 (adopting reasoning in

19  *Avilez*); *Singh*, 2020 WL 1929366, at *6 -7 (same). This reasoning, however, fails to take into

20  account that § 1226(c) detention is mandatory—as the Supreme Court emphasized—while

21  § 1226(a) detention is not. As discussed above, the Supreme Court in *Jennings* clearly

22  established that § 1226(c) mandates detention until there is a decision on whether the noncitizen

23  is to be removed from the United States. Under *Casas-Castrillon*, however, some § 1226(c)

1    detainees become subject to § 1226(a) *before* a decision has been made on whether they are to be

2    removed. Thus, even though a decision has not been made as to whether they are to be removed,

3    they are no longer subject to mandatory detention, as required by *Jennings*. Given that

4    *Casas-Castrillon* requires discretionary detention when *Jennings* requires mandatory detention,

5    *Casas-Castrillon* cannot be applied without "running afoul" of *Jennings*. *Lair*, 697 F.3d at 1207.

6    The court in *Birru* offered one other reason why *Casas-Castrillon* and *Jennings* are

7    reconcilable, explaining:

> [T]he United States Supreme Court [in *Jennings*] repeatedly emphasized that 28
> U.S.C. § 1226(c) mandates detention only as to "[noncitizens] *within its scope*."
> 138 S.Ct. at 846 (emphasis added); *see also id.* at 847 ("We hold that § 1226(c)
> mandates detention of any [noncitizen] falling *within its scope* and that detention
> may end prior to the conclusion of removal proceedings 'only if' the [noncitizen]
> is released for witness-protection purposes." (emphasis added)). The
> *Casas-Castrillon* court held that petitioners who are subject to a final removal order
> and then seek judicial review of that removal order are no longer within the scope
> of 28 U.S.C. § 1226(c). *See Casas-Castrillon*, 535 F.3d at 951 ("[Section] 1226(c)
> does not authorize prolonged mandatory detention after [a noncitizen's]
> administrative proceedings are complete. Rather, these [noncitizens] are detained
> under the Attorney General's broader grant of discretionary authority under
> § 1226(a)."). The United States Supreme Court said nothing about that conclusion.
> Thus, *Casas-Castrillon* and *Jennings* can be readily harmonized insofar as: (1)
> *Casas-Castrillon* narrowed the scope of noncitizens who are subject to detention
> under 8 U.S.C. § 1226(c); and (2) *Jennings* then explained the statutory
> consequences for the noncitizens who continue to fall within the scope of 8 U.S.C.
> § 1226(c).

*Birru*, 2020 WL 1905581, at *7-8 (alterations added); *see also Singh*, 2020 WL 1929366, at *6-7

(adopting reasoning in *Birru*). This Court, however, reads *Jennings*'s reference to the "scope" of

§ 1226(c) to refer to the categories of noncitizens described in § 1226(c)(1), as opposed to those

detained under § 1226(a). Regardless, to the extent *Casas-Castrillon* can be characterized as

narrowing the "scope" of who is detained under § 1226(c), it did so by shortening the duration of

detention authorized by the statute. As explained above, the way in which it did so—by holding

that the government's § 1226(c) detention authority terminates when the BIA issues its

1  decision—is clearly irreconcilable with *Jennings*. Accordingly, the Court declines to follow

2  *Birru*.

3       In sum, the Court concludes that Petitioner's detention is governed by § 1226(c). As

4  such, he is subject to mandatory detention until his removal proceedings have concluded, which

5  includes a final ruling on his pending petition for review. The Court does not know of any

6  authority that permits federal courts to order the release of § 1226(c) detainees, and therefore

7  recommends that Petitioner's request for release be denied.

8      **B.  Due Process Requires that Petitioner be Afforded a Bond Hearing**

9       In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a due process

10  challenge to § 1226(c). The Supreme Court explained that Congress drafted § 1226(c) to respond

11  to the high rates of crime and flight by removable noncitizens convicted of certain crimes and

12  held that "the Government may constitutionally detain deportable [noncitizens] during the

13  limited period necessary for their removal proceedings." *Id.* at 518-21, 526. In so holding, the

14  Supreme Court stressed the "brief" nature of the mandatory detention under § 1226(c), which has

15  "a definite termination point" that, in the vast majority of cases, results in detention of less than

16  about five months. *Id.* at 529-30. Justice Kennedy's concurring opinion, which created the

17  majority, reasoned that under the Due Process Clause, a noncitizen could be entitled to "an

18  individualized determination as to his risk of flight and dangerousness if the continued detention

19  became unreasonable or unjustified." *Id.* at 532.

20       The Government relies on *Demore* to argue that Petitioner's mandatory detention

21  comports with due process.[3] (Mot. at 12-14.) *Demore*, however, did not address the

22

23  [3] The Government also cites the Supreme Court's decision in *Preap*, 139 S.Ct. at 970. (Mot. at 14.) *Preap*, however, involved a challenge to lower courts' statutory interpretation of § 1226(c) and did not raise constitutional issues. Accordingly, it does not bear on the Court's due process analysis in this case.

1   constitutionality of prolonged, mandatory detention. Nor did *Jennings*, instead remanding to the

2   Ninth Circuit to address the constitutional issue in the first instance. 138 S.Ct. at 851-52. The

3   Ninth Circuit in turn remanded to the district court. *Rodriguez v. Marin* ("*Rodriguez IV*"), 909

4   F.3d 252, 255 (9th Cir. 2018). In doing so, the Ninth Circuit expressed "grave doubts that any

5   statute that allows for arbitrary prolonged detention without any process is constitutional or that

6   those who founded our democracy precisely to protect against the government's arbitrary

7   deprivation of liberty would have thought so." *Id.* at 256. Petitioner has been detained for 34

8   months, an exceedingly long time. Given that *Demore* did not consider such a prolonged

9   detention, the Court finds that the case does not resolve Petitioner's constitutional challenge.

10      The Government next argues that under the traditional balancing test of *Mathews v.*

11  *Eldridge*, 424 U.S. 319 (1976), the facts of this case weigh against finding Petitioner's detention

12  is unnecessarily prolonged. (Mot. at 14-15.) To determine whether the procedures provided are

13  constitutionally sufficient, *Mathews* requires courts consider three distinct factors: (1) the private

14  interest at stake; (2) the government's interest, including the function involved and the fiscal and

15  administrative burdens that any additional procedural requirements would entail; and (3) the risk

16  of an erroneous deprivation of the private interest at stake through the procedures used, and the

17  probable value, if any, of additional procedural safeguards. 424 U.S. at 335.

18      "The law post-*Jennings* regarding when and whether repeated bond hearings are required

19  is quite unsettled." *Yagao*, 2019 WL 1429582, at *2. In this district, judges generally have

20  declined to apply *Mathews* when a noncitizen who is subject to prolonged mandatory detention

21  has never had a bond hearing, instead favoring a multi-factor test adopted by a majority of

22  district courts around the country. *See, e.g.*, *Banda v. McAleenan*, 385 F.Supp.3d 1099, 1106-07

23

---

*See Yagao v. Figueroa*, No. 17-2224, 2019 WL 1429582, at *3 (S.D. Cal. Mar. 29, 2019) (explaining that *Preap* does not address whether prolonged detention without a hearing violates due process).

REPORT AND RECOMMENDATION - 13

(W.D. Wash. 2019) (addressing mandatory detention under § 1225(b)(1)); *Djelassi*, 434

F.Supp.3d at 920-21 (same); *Martinez v. Clark*, No. 18-1669, 2019 WL 5968089, at *6-9, *8 n.8

(W.D. Wash. May 23, 2019), *R & R adopted*, 2019 WL 596285 (W.D. Wash. Nov. 13, 2019)

(addressing mandatory detention under § 1226(c)); *but see Mitka v. ICE Field Office Director*,

No. 19-193, 2019 WL 5892025, at *2-4 (W.D. Wash. Nov. 12, 2019) (analyzing constitutionality

of detention under both *Banda* and *Mathews* and declining to decide which test applies). For

§ 1226(c) detainees, those factors are: (1) the total length of detention to date; (2) the likely

duration of future detention; (3) whether the detention will exceed the time the petitioner spent in

prison for the crime that made him removable; (4) the nature of the crimes the petitioner

committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the

petitioner; (7) delays in the removal proceedings caused by the government; and (8) the

likelihood that the removal proceedings will result in a final order of removal.[4] *Martinez*, 2019

WL 5968089, at *9. The *Banda* court explained why it adopted a multi-factor test instead of

*Mathews*: "[T]he *Mathews* test balances the benefits or burdens of 'additional or substitute

procedural safeguards.' It does not resolve the more fundamental issue of whether any

procedure—such as a bond hearing—must be provided." *Banda*, 385 F.Supp.3d at 1106-07

(internal citation omitted).

      As the Government recognizes, Petitioner has already had a bond hearing at which the IJ

made the alternative finding that he presents a danger and a flight risk. Thus, the Government

argues that *Banda* does not apply, and the Court should employ the *Mathews* test. (Mot. at 14

n.5.) *Banda* acknowledged that "the *Mathews* factors may be well-suited to determining whether

due process requires a second bond hearing," *Banda*, 385 F.Supp.3d at 1118, and judges in this

---

[4] The *Banda* test applies to arriving noncitizens and is the same as the *Martinez* test except it does not
include the third and fourth *Martinez* factors, which address criminal history.

district have applied *Mathews* to determine whether subsequent bond hearings are required for

noncitizens subject to discretionary detention under § 1226(a), *see, e.g.*, *Viramontes-Gomez v.*

*Nielsen*, No. 18-935, 2018 WL 6111015, at *4 (W.D. Wash. Oct. 18, 2018), *R. & R. adopted*,

2018 WL 6107293 (W.D. Wash. Nov. 21, 2018). However, no judge has yet considered which

test should govern requests for subsequent bond hearings by § 1226(c) detainees. Outside this

district, judges have taken different approaches. *See, e.g.*, *Vallejo v. Decker*, No. 18-5649, 2018

WL 3738947 *3 (S.D.N.Y. Aug. 7, 2018) (applying multi-factor test similar to that adopted in

*Banda* and *Martinez*); *Sahota v. Allen*, No. 20-3180, 2020 WL 2992872, at *6 (N.D. Cal. June 4,

2020) (applying *Mathews*); *Zagal-Alcaraz v. ICE Field Office Director*, No. 19-1358, 2020 WL

1862254, at *4 (D. Or. Mar. 25, 2020), *R. & R. adopted*, 2020 WL 1855189 (D. Or. Apr. 13,

2020) (because the law is unsettled, applying both the *Martinez* multi-factor test and *Mathews*).

       Because Petitioner is proceeding *pro se*, the Court does not have the benefit of opposing

counsel's arguments on this issue. As discussed below, the Court concludes that both tests lead

to the same result: Petitioner should be granted a bond hearing. Accordingly, the Court declines

to decide which test should apply.

                *1.    Multi-Factor Test*

       The multi-factor test set forth in *Martinez* is derived from the Supreme Court's decisions

in *Demore* and *Zadvydas v. Davis*, 533 U.S. 678 (2001), and pre-*Jennings* circuit court cases

holding, as a matter of constitutional avoidance, that § 1226(c) implicitly authorizes detention for

only a reasonable amount of time. *See Reid v. Donelan*, 819 F.3d 486, 494 (1st Cir. 2016),

*vacated in light of Jennings*, 2018 WL 4000993 (1st Cir. May 11, 2018); *Diop v. ICE/Homeland*

*Sec.*, 656 F.3d 221, 222-23 (3d Cir. 2011), *abrogated by Jennings*, 138 S.Ct. 830; *Ly v. Hansen*,

351 F.3d 263, 269-70 (6th Cir. 2003), *abrogated by Jennings*, 138 S.Ct. 830; *Sopo v. U.S. Att'y*

*Gen.*, 825 F.3d 1199 (11th Cir. 2016), *vacated as moot*, 890 F.3d 952 (11th Cir. 2018).

"Reasonableness, by its very nature, is a fact-dependent inquiry requiring an assessment of all of the circumstances of any given case." *Reid*, 819 F.3d at 497 (quoting *Diop*, 656 F.3d at 234). Having considered all the circumstances in this case, the Court concludes that Petitioner's prolonged detention without a subsequent bond hearing has become unreasonable.

i.        Length of Detention to Date

The length of detention is the most important factor. *See, e.g.*, *Martinez*, 2019 WL 5968089, at *9; *Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018) (citing *Zadvydas*, *Sopo*, and *Diop*). Petitioner's only bond hearing was over 25 months ago, and he has been in detention for 34 months. This factor weighs strongly in favor of granting him a bond hearing. *See Zagal-Alcaraz*, 2020 WL 1862254, at *4 (23-month period of detention after initial bond hearing strongly supported granting relief); *Vallejo*, 2018 WL 3738947, at *4 (17-month period of detention after initial bond hearing strongly favored another bond hearing).

ii.        Likely Duration of Future Detention

Next, the Court "considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9. Oral argument on Petitioner's petition for review was scheduled for September 3, 2020. Most cases are decided within three to twelve months of oral argument. *See* U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions, www.ca9.uscourts.gov/content/faq.php (last visited 9/4/2020). Petitioner's case may be decided quickly, but it is also possible the Ninth Circuit will not decide his case for another year or possibly more. Thus, the Court concludes that this factor weighs somewhat in Petitioner's favor.

iii.    Criminal History

The third and fourth factors require the Court to review the length of civil detention compared to any criminal sentence and the nature of the petitioner's crime. *Martinez*, 2019 WL 5968089, at *9. The immigration courts found that the government presented some evidence that Petitioner provided material support to terrorists while in Iraq before he came to the United States in 2011. Petitioner, however, has never received a criminal sentence or been convicted of any crime. The Government's briefing also does not point to evidence that Petitioner has engaged in any terrorism-related activities while in the United States. Accordingly, the Court concludes that these factors weigh in his favor.

iv.    Conditions of Detention

Next, the Court considers the conditions at the NWIPC where Petitioner is detained. *Martinez*, 2019 WL 5968089, at *9. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger [the] argument that he is entitled to a bond hearing." *Jamal A. v. Whitaker*, 358 F.Supp.3d 853, 860 (D. Minn. 2019) (quoted source omitted). The parties do not present evidence regarding the conditions at the NWIPC, and therefore the Court finds this factor to be neutral.

v.    Extent of Delay Attributable to Petitioner

"Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F.Supp.3d 959, 965 (D. Minn. 2019) (citing *Hernandez v. Decker*, No. 18-5026, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("[T]he mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous

arguments in opposition.")). Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his incarceration." *Ly*, 351 F.3d at 272; *see also Sopo*, 825 F.3d at 1218 ("Evidence that the [noncitizen] acted in bad faith or sought to deliberately slow the proceedings in hopes of obtaining release cuts against the [noncitizen].")). Thus, this factor weighs against finding detention unreasonable when a noncitizen "has 'substantially prolonged his stay by abusing the processes provided,'" but not when he "simply made use of the statutorily permitted appeals process." *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)); *see also Campbell v. Barr*, 387 F.Supp.3d 286, 297 n.7 (W.D.N.Y. 2019).

The Government argues that the length of Petitioner's detention is the result of his choices and litigation strategies, including: (1) requesting three continuances totaling approximately 100 days; (2) challenging his removability, which required testimony over three merits hearings; (3) seeking relief from removal, which necessitated an additional hearing; (4) filing an appeal to the BIA; and (5) filing a petition for review and motion for stay of removal. (Mot. at 16.) None of this, however, suggests an abuse of the available processes. Petitioner requested two continuances to find a lawyer, and then once he obtained counsel, his counsel requested one additional continuance. Beyond those delays, which account for only a small portion of the time he has been detained, he has been pursuing what appear to be legitimate defenses to removal. Indeed, the Ninth Circuit views his claims as substantial enough to warrant oral argument. Accordingly, the Court concludes that this factor favors Petitioner. *See Martinez*, 2019 WL 5968089, at *10 ("[T]here is no indication that petitioner engaged in deliberate delay

tactics. He requested two reasonable continuances so he could prepare and file a motion to terminate and applications for relief from removal . . . . [T]he sixth factor favors petitioner.").

vi.    Extent of Delay Attributable to the Government

With respect to the government, "If immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable. . . . Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous*, 2018 WL 2357266, at *11 (citing *Demore* and *Reid*). It does not appear that there have been unreasonable delays that are attributable to the Government. Accordingly, this factor weighs in favor of the Government. *See Zagal-Alcaraz*, 2020 WL 1862254, at *6 (finding that where no delay was attributable to the government, this factor weighed in the government's favor).

vii.    Likelihood of a Final Order of Removal

Finally, the Court considers "the likelihood that the removal proceedings will result in a final order of removal." *Liban M.J.*, 367 F.Supp.3d at 965. "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at *10; *Sajous*, 2018 WL 2357266, at *11. "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Martinez*, 2019 WL 5968089, at *10 (citing *Sajous* and *Demore*). "But where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Reid*, 819 F.3d at 400-500).

1    The Court declines to weigh in on the merits of Petitioner's claims pending before the

2    Ninth Circuit. However, given that the Ninth Circuit has scheduled oral argument, it appears

3    Petitioner has asserted a good faith challenge to his removal. Accordingly, the Court concludes

4    that this factor weighs slightly in Petitioner's favor.

5         viii.    Weighing the Factors

6       Of the eight factors, six weigh in Petitioner's favor: length of detention, likely duration of

7    future detention, length of criminal sentence in relation to immigration detention, criminal

8    history, delay attributable to Petitioner, and likelihood of removal. One factor weighs in favor of

9    the Government: delay attributable to the government. One factor is neutral: the conditions of

10    confinement. Having considered all the factors, the Court concludes that Petitioner's continued

11    detention without a bond hearing is unreasonable and in violation of his due process rights. *See*

12    *Zagal-Alcaraz*, 2020 WL 1862254, at \*6 (granting bond hearing where five of the eight factors

13    favored the petitioner); *Martinez*, 2019 WL 5968089, at \*11 (granting bond hearing where four

14    of the eight factors favored the petitioner).

15         *2.*   *Mathews Test*

16       As explained above, the *Mathews* test determines whether the provided procedures are

17    constitutionally sufficient by weighing the private interest at stake, the government's interest,

18    and the risk of an erroneous deprivation of liberty and the value of additional safeguards. The

19    Court concludes that these factors also favor granting a bond hearing.

20         i.    Private Interest

21       "As to the first factor, the private interest at issue here is 'fundamental': freedom from

22    imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez v.*

23    *Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (addressing § 1226(a) detainees); *see also*

1    *Zagal-Alcaraz*, 2020 WL 1862254, at *6 ("Detainees challenging Section 1226(c) mandatory

2    detention 'undoubtedly [have] a strong liberty interest to be free from arbitrary or unreasonable

3    imprisonment.'") (quoted source omitted). Petitioner has been detained for 34 months and it has

4    been over 25 months since his only bond hearing. "There should be no reasonable dispute that

5    Petitioner has a strong liberty interest to be free from prolonged detention without a hearing."

6    *Zagal-Alcaraz*, 2020 WL 1862254, at *6. This factor weighs heavily in Petitioner's favor.

7           The Government nevertheless argues that Petitioner's liberty interest is weaker than that

8    of noncitizens subject to other detention authority because he belongs to a class of noncitizens

9    for whom flight risk and danger to the community are statutorily presumed. (Mot. at 16 (citing

10   *Demore*, 538 U.S. at 528 ("Such detention necessarily serves the purpose of preventing

11   deportable criminal [noncitizens] from fleeing prior to or during their removal proceedings, thus

12   increasing the chance that, if ordered removed, the [noncitizens] will be successfully

13   removed.")).) The Court is not persuaded that Petitioner's status as a § 1226(c) detainee

14   meaningfully affects his liberty interest in comparison with other noncitizens. *Demore* did not

15   address prolonged detention, nor did it consider the petitioner's private interest under the

16   *Mathews* test. Furthermore, while the Ninth Circuit has acknowledged that detainees at different

17   stages in the removal process may have different levels of interest in freedom from detention, it

18   has rejected the government's efforts to meaningfully distinguish between the liberty interests of

19   detainees subject to post-removal order detention (who arguably have a lesser interest than those

20   detained during removal proceedings), and § 1226(a) detainees: "Regardless of the stage of the

21   proceedings, the same important interest is at stake—freedom from prolonged detention." *Diouf*

22   *v. Napolitano*, 634 F.3d 1081, 1087 (9th Cir. 2011). Although *Diouf* did not directly address

23   § 1226(c), the court's refusal to accord post-removal order detainees a lesser liberty interest than

those detained under § 1226(a) strongly suggests § 1226(c) detainees' liberty interest should not

be discounted either. Indeed, district courts applying the *Mathews* factors regularly recognize

that § 1226(c) detainees have a strong private interest. *See, e.g.*, *Zagal-Alcaraz*, 2020 WL

1862254, at *6.

The Government also argues that Petitioner has a lesser liberty interest because the length

of detention is a result of his litigation strategies. (Mot. at 16-17.) As discussed above with

respect to the *Martinez* factors, however, Petitioner has not engaged in dilatory tactics and his

good faith use of the processes afforded to him does not weigh against finding that his prolonged

detention is unreasonable. *See, e.g.*, *Hechavarria*, 891 F.3d at 56 n.6; *Liban M.J.*, 367 F.Supp.3d

at 965; *Hernandez*, 2018 WL 3579108, at *9.

ii.      Government's Interest

The Government argues that it has a weighty interest in upholding § 1226(c)'s statutory

framework of mandatory detention for noncitizens whom Congress has deemed pose a flight risk

or danger to the community based on their offenses. (Mot. at 18.) The Government further

contends that requiring a bond hearing for these detainees would frustrate enforcement efforts

and could result in an IJ making an erroneous prediction regarding a § 1226(c) detainee's flight

risk or dangerousness. (*Id.* at 18-19.)

The Court agrees that the Government has an interest in enforcing the statute. However,

as other courts have recognized, the key government interest at stake here "is not the continued

detention of Petitioner, but the government's ability to detain him without a bond hearing."

*Zagal-Alcaraz*, 2020 WL 1862254, at *7 (collecting cases). Given "the minimal cost of

conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to

whether Petitioner's continued detention is justified," courts have concluded that "the

government's interest is not as weighty as Petitioner's." *Id.* (quoting *Lopez Reyes v. Bonnar*, 362 F.Supp.3d 762, 777 (N.D. Cal. 2019)). The Court agrees with this analysis. Although the Government's interest has some weight, it is not as significant as Petitioner's interest.

               iii.        Risk of Erroneous Deprivation/Value of Additional Safeguards

      The Government argues that the Court need not weigh the third *Mathews* factor because Congress has already determined that Petitioner is among a class of individuals who are sufficiently dangerous that detention should be mandatory. (Mot. at 19.) The Government does not cite any authority resolving the third *Mathews* factor on this basis, and the Court declines to abdicate its responsibility to consider all three *Mathews* factors.

      Petitioner has already received one bond hearing, and thus the risk of an erroneous deprivation of his liberty interest is less than noncitizens subject to prolonged detention who have never received a bond hearing. Nevertheless, there is no indication in the record that Petitioner's initial bond hearing comported with the due process requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011), which requires the Government to justify prolonged detention by clear and convincing evidence. *See, e.g.*, *Banda*, F.Supp.3d at 1120-21 (requiring immigration judge to apply the procedural requirements of *Singh*, 638 F.3d at 1208); *Djelassi*, 434 F.Supp.3d at 923-24 (same); *Martinez*, 2019 WL 5968089, at *11 (same and collecting cases); *Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020) (holding that *Jennings* did not undercut the constitutional due process holding in *Singh*). Given that Petitioner's only bond hearing occurred over two years ago and does not appear to have been conducted in compliance with *Singh*, the Court finds that the third *Mathews* factor weighs in Petitioner's favor. *See Yagao*, 2019 WL 1429582, at *1 (granting bond hearing after two years had passed since initial hearing).

iv.        Weighing the Factors

On balance, the *Mathews* factors weigh in favor of finding that Petitioner's prolonged detention without a second bond hearing is unreasonable. *See Zagal-Alcaraz*, 2020 WL 1862254, at *7 (collecting cases).

3.        *Remedy*

Both the multi-factor and *Mathews* test require the conclusion that Petitioner's 25 months in immigration detention without a bond hearing is unreasonable and violates his procedural due process rights. The proper remedy for this constitutional violation is a bond hearing at which the Government bears the burden of establishing by clear and convincing evidence that Petitioner currently presents a flight risk or danger to the community. *See Banda*, F.Supp.3d at 1120-21 (requiring immigration judge to apply the procedural requirements of *Singh*, 638 F.3d at 1208); *Djelassi*, 434 F.Supp.3d at 923-24 (same); *Martinez*, 2019 WL 5968089, at *11 (same and collecting cases).

## IV.    CONCLUSION

The Court recommends that both the Government's motion to dismiss (dkt. # 5) and Petitioner's habeas petition (dkt. # 1) be GRANTED in part and DENIED in part. Specifically, the Court recommends denying Petitioner's request for release but ordering the Government to provide him with a bond hearing within 30 days of the order on this Report and Recommendation that comports with the procedural requirements of *Singh*. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect

REPORT AND RECOMMENDATION - 24

your right to appeal. Objections should be noted for consideration on the District Judge's

motions calendar for the third Friday after they are filed. Responses to objections may be filed

within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter

will be ready for consideration by the District Judge on October 9, 2020.

      Dated this 14th day of September, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 25